UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

RAUL CARRILLO-RAMIREZ,
Petitioner,
v.
CHRISTOPHER LAROSE, et al.,
Respondents.

Case No.: 26-CV-6309 JLS (AHG)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

(ECF No. 1)

Presently before the Court is Raul Carrillo-Ramirez's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court are Respondents' Return ("Ret.," ECF No. 4) and Petitioner's Traverse ("Trav.," ECF No. 5). For the reasons set forth below, the Court **GRANTS** the Petition.

**BACKGROUND**

Petitioner entered the United States in 2021. Pet. at 3. In 2024, the Department of Homeland Security ("DHS") detained Petitioner, served him with a notice to appear, and charged him as removable. *Id.* at 4. The same day, DHS release Petitioner on his own recognizance. *Id.* Ex. A. The release order "required Petitioner to report for hearings and interviews as directed, to report to ICE as indicated on an attached reporting form, not to

change his residence without permission, not to violate any law, and to assist DHS in obtaining travel documents." *Id.*

In August of this year, Petitioner was arrested and booked for violations of five crimes. Ret. at 2, Ex. 1. Petitioner was then charged with a single misdemeanor count of inflicting willful injury on an intimate partner, but has not pled guilty or been convicted. Pet. at 4. He was released from criminal custody but was re-detained by DHS last month. *Id.* at 5. Petitioner argues that his re-detention violates his due process rights because DHS did not provide Petitioner with prior notice or an opportunity to be heard. *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp at 1032 (citing *Romero v. Kaiser*, No. 22-cv-20508-TSH, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Here, Petitioner was briefly detained by DHS, after which he was released on his own recognizance. Petitioner thus had a protected liberty interest. *Pinchi*, 792 F. Supp at 1032. As Petitioner has such an interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Mathews* factors. *See Mathews*, 424 U.S. at 335. Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's release without notification or an opportunity to be heard, denied Petitioner of his due process rights.

First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's release was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Pet. at 5. Since DHS's initial determination that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Saravia*, 280 F. Supp. 3d at 1760.

Respondents argue that Petitioner had notice of his revocation because he violated the conditions of his release by admitting he was arrested for a violation of California law. Ret. at 2. But a mere arrest, charge, or allegation is not evidence of a crime. Indeed, "courts typically draw a distinction where there has only been an arrest or pending charges, and … have repeatedly found that the government violated due process regardless of a non-citizen's pending criminal charges when they are re-detained without notice or an opportunity to be heard." *Garcia Radillo v. Scott*, No. 2:26-CV-02357-JHC, 2026 WL 2168044, at *3 (W.D. Wash. July 28, 2026) (collecting cases involving charges of spousal and child abuse, DUI, and assault).

/ / /

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp at 1035; *Matute v. Wofford*, 807 F. Supp. 3d 1120, 1126 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his release in violation of the Due Process Clause, his detention is unlawful.[1] *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 5), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting release. Additionally, given the nature of Petitioner's criminal charges, Respondents may impose other reasonable conditions of supervision. *See Arici v. Blanche*, No. 3:26-CV-04512-RBM-DEB, 2026 WL 2771704, at *2 (S.D. Cal. Sept. 16, 2026); *Chea v. Blanche*, No. 2:26-cv-00635-RFB-NJK, 2026 WL 2065431, at *3 (D. Nev. July 16, 2026).

The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his release and a hearing before a neutral

---

[1] Respondents also argue that Petitioner has failed to exhaust his administrative remedies. Ret. at 2. But "administrative remedies are not adequate to address [P]etitioner's due process challenge to his re-detention . . . ." *Osorto Velasco v. Charles*, No. 1:26-CV-07091-DC-JDP (HC), 2026 WL 3071574 (E.D. Cal. Oct. 14, 2026).

decision maker to determine whether detention is warranted. The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. The Parties are **ORDERED** to file a Joint Status Report by November 20, 2026, confirming that Petitioner has been released. As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: November 16, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge